UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

v.

D-1 JAMES LETKO,
D-2 STEVEN KING,
D-3 RAMI LAZEKI,
D-4 PATRICIA FLANNERY,
D-5 KATHERINE PETERSON

Defendants.

Case:2:19-cr-20652
Judge: Lawson, David M.
MJ: Grand, David R.
Filed: 09-26-2019 At 03:47 PM
INDI USA V. LETKO, ET AL. (AF)

VIO.: 18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 2
18 U.S.C. § 981
18 U.S.C. § 982

_______________________________/

# INDICTMENT

**THE GRAND JURY CHARGES:**

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### The Medicare Program

1. The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare covered different types of benefits and was separated into different program "parts." Medicare Part D subsidized the cost of prescription drugs for Medicare beneficiaries in the United States. Generally, Medicare Part D covered part or all of the costs of prescription drugs dispensed to a Medicare beneficiary if, among other requirements, the prescription drugs were medically necessary and ordered by a physician.

3. In order to receive Medicare Part D benefits, a beneficiary enrolled in one of several Medicare drug plans. Medicare drug plans were operated by private health care insurance companies approved by Medicare. Those companies were often referred to as drug plan "sponsors." A beneficiary in a Medicare drug plan could fill a prescription at a pharmacy and use his or her plan to pay for some or all of the prescription drugs.

4. Medicare, through CMS, compensated the Medicare drug plan sponsors for providing prescription drug benefits to beneficiaries. Medicare paid the sponsors a monthly fee for each Medicare beneficiary of the sponsors' plans. Such payments were called capitation fees. The capitation fee was adjusted periodically based on various factors, including the beneficiary's medical conditions. In addition, in some cases where a sponsor's expenses for a beneficiary's prescription drugs exceeded that beneficiary's capitation fee, Medicare reimbursed the sponsor for a portion of those additional expenses.

## Pharmacy Benefit Managers

5. Pharmacy benefit managers ("PBMs") managed prescription drug benefits provided by Medicare (through Medicare drug plan sponsors). PBMs received, adjudicated, and paid claims on behalf of the health care benefit programs.

6. After a pharmacy dispensed a prescription drug to a beneficiary or member, the pharmacy submitted a claim, typically electronically, to the PBM acting on behalf of the specific health care benefit program. The PBM, on behalf of the health care benefit program, reimbursed the pharmacy, typically electronically, through direct deposits into accounts held, and previously identified, by the pharmacy.

7. CVS Caremark, and Express Scripts were two of the several PBMs that managed prescription drug benefits for Medicare through Medicare drug plan sponsors.

8. CVS Caremark processed and adjudicated claims in Arizona. OptumRx and Express Scripts processed and adjudicated claims outside the state of Michigan.

9. During the period of this indictment, the A1C Pharmacies were parties to provider agreements (directly or indirectly) with one or more PBMs.

**The Entities**

10. A1C Holdings, LLC ("A1C") was a Florida limited liability company located at 3660 Enterprise Way, Miramar, FL 33025.

11. All American Medical Supplies, LLC ("AAMS") was a Florida limited liability company located at 3640 Enterprise Way, Miramar, FL 33025.

**The Pharmacies (collectively "A1C Pharmacies")**

12. Great Lakes Medical Pharmacy d/b/a All American Medical Pharmacy ("AAMP") was a pharmacy and Michigan limited liability company located at 23247 Pinewood Street, Suite 100, Warren, MI 48091.

13. Heartland Medical, LLC ("Heartland") was a pharmacy and Kansas limited liability company located at 7955 Flint Street, Lenexa, Kansas 48091.

14. Heart of America, LLC ("HOA") was a pharmacy and Missouri limited liability company located at 4338 East 142nd Street, Grandview, Missouri 64030.

15. Hudgins Pharmacy INC. ("HUDGINS") was a Virginia pharmacy located at 256 Main Street, Mathews, Virginia 23109.

16. Beta Discount Pharmacy and Health Services ("Beta") was a Georgia pharmacy, located at 776 Sandtown Road, SW, Marietta, Georgia 30008.

17. Big Bend Pharmacy, LLC ("Big Bend") was a pharmacy and Tennessee limited liability company, located 6045 East Shelby Drive, Suite A, Memphis, Tennessee 38141.

18. HCP Pharmacy, LLC d/b/a Steeplechase ("Steeplechase") was a Texas pharmacy, located 10694 Jones Road, Suite 115, Houston, Texas 77065.

## The Defendant

19. Defendant JAMES LETKO, a resident of Hunterdon County, New Jersey, was the Chief Executive Office ("CEO") of A1C.

20. Defendant STEVEN KING, a resident of Broward County, Florida, was the Chief Compliance Officer ("CCO") of A1C.

21. Defendant RAMI LAZEKI, a resident of Wayne County, Michigan, was the pharmacist in charge (PIC) at AAMP.

22. Defendant PATRICIA FLANNERY, a resident of Northhampton, County, New Jersey, was an employee of A1C.

23. Defendant KATHERINE PETERSON, a resident of Hunterdon County, New Jersey, was an employee of A1C.

## COUNT 1
## Conspiracy to Commit Health Care Fraud and Wire Fraud
## (18 U.S.C. § 1349)

24. Paragraphs 1 through 23 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

25. From at least in or around the end of 2013, and continuing through in or around the end of 2018, the exact dates being unknown to the Grand Jury, in Macomb County, in the Eastern District of Michigan and elsewhere, JAMES LETKO, STEVEN KING, RAMI LAZEKI, PATRICIA FLANNERY AND KATHERINE PETERSON and others did willfully and knowingly combine, conspire, confederate, and agree to commit certain offenses against the United States, that is:

(a) to violate Title 18, United States Code, Section 1347, that is, to knowingly and willfully execute a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medicare drug plan sponsors, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services; and

(b) to violate Title 18, United States Code, Section 1343, that is, to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and

promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice.

**Purpose of the Conspiracy**

26. It was a purpose of the conspiracy for JAMES LETKO, STEVEN KING, RAMI LAZEKI, PATRICIA FLANNERY AND KATHERINE PETERSON and others to unlawfully enrich themselves and others by, among other things: (a) submitting, and causing the submission of, false and fraudulent claims to Medicare and Medicare drug plan sponsors, through the A1C Pharmacies; (b) concealing, and causing the concealment of, the submission of false and fraudulent claims to Medicare and Medicare drug plan sponsors and the receipt and transfer of the proceeds of the fraud; and (c) diverting fraud proceeds for the personal use and benefit of the defendant and others.

**Manner and Means of the Conspiracy**

The manner and means by which the defendant and others sought to accomplish the purpose of the conspiracy included, among others, the following:

27. JAMES LETKO, STEVEN KING, KATHERINE PETERSON, and others on behalf of A1C, submitted credentialing paperwork and entered into

pharmacy provider agreements with CVS Caremark, Express Scripts and other PBMs.

28. The PBMs required a signed certification that the information provided in the application materials are true and accurate, including but not limited to, who maintains ownership or control over a specific phramacy and whether the pharmacy provided services as a retail or mail order business.

29. The A1C Pharmacies consisted of under performing retail pharmacies or new pharmacies that JAMES LETKO, as CEO of A1C, would purchase or create. The A1C Pharmacies were subsidiaries of A1C.

30. JAMES LETKO, STEVEN KING and KATHERINE PETERSON would conceal JAMES LETKO'S ownership of, or economic or controlling interest in the A1C Pharmacies by installing nominee owners of the A1C Pharmacies to deceive the PBMs into paying for prescriptions and agreeing to contracts with the individual A1C Pharmacies they would have otherwise denied had they known that the individual A1C Pharmacies were in fact owned or controlled by JAMES LETKO.

31. KATHERINE PETERSON was named as the nominee owner of Hudgins when in fact, the true owner was JAMES LETKO.

32. JAMES LETKO, STEVEN KING and others made material misrepresentations on the applications submitted to the PBMs by registering the A1C

Pharmacies as retail pharmacies, when in fact, all of the A1C Pharmacies functioned as mail order pharmacies to deceive the PBMs into paying for prescriptions they would have otherwise denied because the PBMs would not have agreed to contract with the A1C Pharmacies under a mail order contract.

33. JAMES LETKO, STEVEN KING, RAMI LAZEKI, and others submitted, and caused the submission of false and fraudulent test claims, via interstate wires, using physician's Medicare National Provider Identification ("NPI") numbers to determine patient eligibility for expensive prescription medications and diabetic testing supplies, without the physicians consent.

34. JAMES LETKO, STEVEN KING, RAMI LAZEKI, and others submitted, and caused the submission of false and fraudulent test claims, via interstate wires, to Medicare and Medicare drug plan sponsors using Medicare beneficiary information to determine patient eligibility for expensive prescription medication, without the Medicare beneficiary's consent.

35. JAMES LETKO, STEVEN KING, RAMI LAZEKI, PATRICIA FLANNERY and KATHERINE PETERSON and others submitted, and caused the submission of, false and fraudulent claims to Medicare and Medicare drug plan sponsors, via interstate wires and on behalf of the A1C Pharmacies, for refills of medically unnecessary prescription drugs and diabetic testing supplies that were shipped without patient consent, including but not limited to dead beneficiaries.

36. During the timeframe of the conspiracy, the PBMs terminated their contracts with the A1C Pharmacies at varying times due to a violation of the terms of the contract. Thereafter, JAMES LETKO, STEVEN KING, RAMI LAZEKI, PATRICIA FLANNERY, and others submitted, and caused the submission of false and fraudulent claims to Medicare and Medicare drug plan sponsors, via interstate wires, by re-directing prescriptions, without patient consent, through A1C Pharmacies or JAMES LETKO'S brother's pharmacies that could still bill those prescriptions to the PBMs.

37. JAMES LETKO, STEVEN KING, RAMI LAZEKI, PATRICIA FLANNERY, and others did not collect co-pays from Medicare beneficiaries in order to induce them to accept refills of expensive medications and diabetic testing supplies without consent.

38. JAMES LETKO, STEVEN KING, RAMI LAZEKI, PATRICIA FLANNERY and KATHERINE PETERSON and others submitted, and caused the submission of, false and fraudulent claims to Medicare and Medicare drug plan sponsors, via interstate wires, and on behalf of the A1C Pharmacies, in an amount exceeding $80 million.

**COUNTS 2-6**
**Health Care Fraud**
**(18 U.S.C. §§ 1347 and 2)**

39. Paragraphs 1 through 23 and 25 through 36 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

40. From on or about the dates set forth below, in the Eastern District of Michigan and elsewhere, the defendant, RAMI LAZEKI, in connection with the delivery of, and payment for, health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud the Medicare Program and Medicare drug plan sponsors, a health care benefit program as defined in 18 U.S.C. § 24(b), and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of Medicare Program and Medicare drug plan sponsors, by submitting or causing the submission of false and fraudulent claims to the Medicare Program and Medicare drug plan sponsors, for prescription medications and diabetic testing supplies that were not medically necessary.

**Purpose of the Scheme and Artifice**

41. The Grand Jury realleges and incorporates by reference Paragraph 26 of this Indictment as a purpose of the scheme and artifice.

## The Scheme and Artifice

42. The Grand Jury realleges and incorporates by reference Paragraphs 26 through 36 of this Indictment as a description of the scheme and artifice.

## Execution of the Scheme and Artifice

43. On or about the dates specified below, in the Eastern District of Michigan, and elsewhere, RAMI LAZEKI, aided and abetted by others, and aiding and abetting others known and unknown to the Grand Jury, submitted or caused to be submitted the following false and fraudulent claims to Medicare and Medicare drug plan sponsors for medications and diabetic testing supplies that were medically unnecessary, in an attempt to execute, and in execution of the scheme as described in paragraphs 25 through 36, with each execution set forth below forming a separate count:

| Count | Program | Beneficiary | Beneficiary Date of Death | Approximate Claim Received and Service Date | Description of Prescription Medication | Claim/ Script ID Number |
|---|---|---|---|---|---|---|
| 2 | Medicare | D.J. | 1/2/2015 | 1/28/2015 | Alcohol Prep Pads | 52379781550 |
| 3 | Medicare | L.A. | 7/4/2015 | 7/23/2015 | Alcohol Prep Pads | 54864304060 |

| Count | Program | Beneficiary | Beneficiary Date of Death | Approximate Claim Received and Service Date | Description of Prescription Medication | Claim/ Script ID Number |
|---|---|---|---|---|---|---|
| 4 | Medicare | L.H. | 2/16/2016 | 3/17/2016 | Alcohol Prep Pads | 62485615183 |
| 5 | Medicare | M.P. | 5/23/2016 | 6/6/2016 | Lidocaine | 56570730939 |
| 6 | Medicare | D.M | 6/28/2016 | 7/8/2016 | Alcohol Prep Pads | 57137600499 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## CRIMINAL FORFEITURE

44. The above allegations contained in this Indictment are incorporated by reference as if set forth fully herein for the purpose of alleging criminal forfeiture to the United States of America of certain property in which JAMES LETKO has an interest.

45. Upon conviction of a violation alleged in this Indictment, JAMES LETKO, STEVEN KING, RAMI LAZEKI, PATRICIA FLANNERY AND KATHERINE PETERSON, shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from proceeds and/or gross proceeds traceable to the commission of such violations, pursuant to 18 U.S.C. § 982(a)(7) and 18 U.S.C. § 981(a)(1)(C), as incorporated by 28 U.S.C. § 2461, including but not limited to:

a. Ninety-Seven Thousand Five Hundred Thirty-Nine Dollars and Three Cents ($97,539.03) in U.S. Currency from Signature Bank Account #XXXXXX3045 in the name of US Medical, LLC;

b. Seven Hundred Thirteen Dollars and Seventy-Five Cents ($713.75) in U.S. Currency from TD Bank Account #XXXXXX8327 in the name of Livewell Holdings, LLC dba Great Lakes Medical Pharmacy, LLC;

c. Three Hundred Seventy-Eight Thousand Five Hundred Fifty-Four Dollars and Sixty-Five Cents ($378,554.65) in U.S. Currency from TD Bank Account #XXXXXX7349 in the name of Great Lakes Medical Pharmacy, LLC dba All American Medical Pharmacy;

d. One Hundred Sixty-Five Thousand Nine Hundred Sixteen Dollars and Ninety-Five Cents ($165,916.95) in U.S. Currency from TD Bank Account #XXXXXX9424 in the name of A1C Holdings;

e. Nineteen Thousand One Hundred Eighty-Four Dollars and Ninety-Five Cents ($19,184.95) in U.S. Currency from TD Bank Account #XXXXXX8319 in the name of Great Lakes Medical Pharmacy, LLC;

f. Thirteen Thousand Four Hundred Seventy-Nine Dollars and Seven Cents ($13,479.07) in U.S. Currency from TD Bank Account #XXXXXX7357 in the name of Great Lakes Medical Pharmacy, LLC dba All American Medical Pharmacy, dba Brightsky Payroll.

46. *Substitute Assets*: If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

a.) cannot be located upon the exercise of due diligence;

b.) has been transferred or sold to, or deposited with, a third party;

c.) has been placed beyond the jurisdiction of the Court;

d.) has been substantially diminished in value; or

e.) has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b) and/or 28 U.S.C. § 2461, to seek to forfeit any other property of defendant, up to the value of the forfeitable property described above.

47. *Money Judgment*: The government shall also seek a forfeiture money judgment from the defendant for a sum of money representing the total amount of proceeds obtained as a result of defendant's violations of 18 U.S.C. §§ 1347 and 1349, as alleged in this Indictment.

THIS IS A TRUE BILL.

s/ Grand Jury Foreperson
Grand Jury Foreperson

MATTHEW SCHNEIDER
UNITED STATES ATTORNEY

s/ Wayne F. Pratt
WAYNE F. PRATT
Chief, Health Care Fraud Unit
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-2548
wayne.pratt@usdoj.gov

s/ Malisa Dubal
MALISA DUBAL
Assistant Chief
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Eighth Floor
Washington, D.C. 20005
(202) 660-2001
Malisa.dubal@usdoj.gov

Dated: September 26, 2019

Case:2:19-cr-20652
Judge: Lawson, David M.
MJ: Grand, David R.
Filed: 09-26-2019 At 03:47 PM
INDI USA V. LETKO, ET AL. (AF)

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cov** |
|---|---|

**NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.**

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | **Judge Assigned:** |
| ☐ Yes ☒ No | **AUSA's Initials:** |

**Case Title:** USA v. James Letko, et al.

**County where offense occurred :** Wayne

**Check One:** ☒ **Felony** ☐ **Misdemeanor** ☐ **Petty**

✓ Indictment/____Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint [**Case number:** ]
____Indictment/____Information --- based upon **LCrR 57.10 (d)** ***[Complete Superseding section below]***.

## Superseding Case Information

**Superseding to Case No:** ____________ **Judge:** ____________

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

September 26, 2019
Date

Malisa Dubal

Malisa Dubal, Trial Attorney
211 West Fort Street, Detroit, MI 48226
Phone: (202) 660-2001
Fax: (313) 226 - 9616
E-Mail address: Malisa.Dubal@usdoj.gov
Attorney Bar #: NY 4628111

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.